IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

LAURA ACKERMAN, *individually and on behalf of all others similarly situated*,

    Plaintiff,

    v.

FUEGO LEADS, LLC, *et al.*

    Defendants.

Case No. 4:23-cv-61

**OPINION & ORDER**

Before the Court is Defendant Fuego Leads, LLC's Motion to Dismiss. ECF No. 66. The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 18; E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion is **DENIED**.

**I. BACKGROUND**

At this juncture, the Court assumes the facts alleged in the Amended Complaint are true. Defendant Fuego Leads, LLC ("Fuego") authorized Defendant Infinix Media, LLC ("Infinix") to place pre-recorded telemarketing calls to the plaintiff and to putative class members on behalf of Defendant Look Both Ways Insurance LLC d/b/a Millennium Health Advisors ("Millennium Health"). *See* ECF No. 46 ¶¶ 30–31, 35–37, 61, 63. The plaintiff's phone number is listed on the National Do Not Call Registry, and the plaintiff did not consent to receive telemarketing calls. ECF No. 46 ¶¶ 30, 32. Nevertheless, the plaintiff "received more than 100 calls from

Infinix, as part of its relationship with Fuego," all of which were "designed to sell . . . health insurance." *Id.* ¶¶ 35–36. Infinix made these unsolicited telemarketing calls to Virginia telephone numbers. *Id.* ¶ 6. The plaintiff is a Virginia resident, and her phone number has a Virginia area code. ECF No. 46 ¶¶ 8, 32.[1]

On May 17, 2023, the plaintiff sued Millennium Health, alleging violations of the Telephone Consumer Protection Act (47 U.S.C. § 227(b)) and the Virginia Telephone Privacy Protection Act (Va. Stat. § 59.1-514). ECF No. 1 ¶¶ 57–66. On February 6, 2024, the plaintiff amended the Complaint to add Fuego and Infinix as defendants. ECF No. 46. Fuego filed the instant motion to dismiss on March 18, 2024, alleging it is not subject to personal jurisdiction in this Court. ECF Nos. 66 (motion), 67 (memorandum). The motion has been fully briefed and is ripe for disposition. ECF Nos. 69 (opposition), 70 (reply).

## II. LEGAL STANDARD

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(2)

"[T]he plaintiff bears the burden of demonstrating personal jurisdiction" when a defendant challenges it under Fed. R. Civ. P. 12(b)(2). *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023) (quotation marks and citation omitted). "The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing." *UMG Recordings, Inc. v. Kurbanov*, 963

---

[1] The Court takes judicial notice that 757 is a Virginia area code. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction[.]"); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (a court may rely on judicially noticed facts in deciding a motion to dismiss, without converting the motion to one for summary judgment).

F.3d 344, 350 (4th Cir. 2020) (citation omitted). Courts may look beyond the complaint to determine whether the plaintiff has met its burden, but they must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citations omitted).

### B.     Personal Jurisdiction

A district court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). The exercise of such jurisdiction "is lawful if (1) [it] is authorized by the long-arm statute of the state in which [the district court] sits and (2) the application of the long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *UMG*, 963 F.3d at 350 (cleaned up); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

The Virginia and federal constitutional due process requirements for personal jurisdiction are met when a defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *see UMG*, 963 F.3d at 351.[2] For the defendant

---

[2] "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG*, 963 F.3d at 350–51 (citing *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560 (1999)) (other citation omitted). "Thus, the district court has jurisdiction over a nonresident defendant . . . if the exercise of such jurisdiction comports with the strictures of constitutional due process." *Id.* at 351.

to have minimum contacts, its "suit-related conduct must create a substantial connection with the forum [s]tate." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

> [The Fourth Circuit has] synthesized the due process requirements for asserting specific personal jurisdiction into a three-prong test: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the [s]tate; (2) whether the plaintiffs' claims arise out of those activities directed at the [s]tate; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*UMG*, 963 F.3d at 351–52 (quotation marks and citations omitted). What matters is "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. at 284.

## III.  ANALYSIS

The Amended Complaint adequately pleads that Fuego is subject to specific jurisdiction in Virginia, because it makes out a prima facie case that Fuego directed Infinix, as its agent, to place calls to the plaintiff's Virginia phone number. *See* ECF No. 46 ¶¶ 6, 14, 35–37, 61–63. Fuego does not dispute that the plaintiff's "claims arise out of [] activities"—*i.e.* telemarketing calls—"directed at [Virginia]" or that "the exercise of personal jurisdiction" over the entity that placed the calls "would be constitutionally reasonable." *UMG*, 963 F.3d at 351–52. Therefore, the only issue before the Court is whether the plaintiff adequately pleads that Fuego "purposefully availed itself of the privilege of conducting activities in [Virginia]." *Id.* at 351.

The Amended Complaint sufficiently alleges purposeful availment, because it pleads that Infinix acted as an agent of Fuego when Infinix "physically dial[ed]" the plaintiff's Virginia phone number. ECF No. 46 ¶ 61. "[A] corporation can purposefully

4

avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014); *see also* ECF No. 67 at 7 (conceding that specific jurisdiction would be established if the Amended Complaint were to adequately plead that Fuego "vicariously targeted Virginia"). That is what the plaintiff alleges Fuego did. *See* ECF No. 46 ¶¶ 6, 14, 63.

The federal common law of agency governs vicarious liability under the TCPA. *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) (quoting *Dish Network, LLC,* 28 FCC Rcd. 6574, 6584 (2013)). Courts look to the Restatement to determine federal common-law agency principles. *Id.* "An agency relationship exists when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control[] and the agent manifests assent or otherwise consents so to act." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 659–60 (4th Cir. 2019) (quoting Rest. (3d) of Agency § 1.01) (quotation marks omitted). The Amended Complaint plausibly alleges an agency relationship between Fuego and Infinix at least by asserting that Fuego "utilize[d]" Infinix as a "third[-]party marketing partner" to "dial [telemarketing] calls," "authorized Infinix to send [those] calls," and "required [Infinix] to follow [the] instructions" set forth by Fuego's own principal, Millenium Health. ECF No. 46 ¶¶ 59–63.

The question, then, is whether the plaintiff pleads that Infinix acted within the scope of its agency authority when it placed the alleged calls to the plaintiff's Virginia phone number. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes

the agent so to act." Rest. (3d) of Agency § 2.01 (quoted by *Ashland Facility Operations, LLC v. N.L.R.B.*, 701 F.3d 983, 990 (4th Cir.2012)). By alleging that Fuego "authorized Infinix" to place calls *en masse* within certain parameters—with no exclusion for recipients in particular states—the Amended Complaint adequately pleads that Fuego gave Infinix actual authority to make the calls to Virginia. ECF No. 46 ¶¶ 84, 14, 63, 58 (parameters).

Even if those allegations are insufficient to plead actual authority, the Amended Complaint plausibly alleges that Fuego ratified Infinix's actions. Fuego admits that Infinix routed an inbound call from the plaintiff's Virginia phone number to Fuego and that Fuego "transferred that call to Millennium Health." ECF No. 67-1 ¶ 16. Even if "Fuego didn't know which states or consumers Infinix . . . intended to target before it received [that] inbound call," ECF No. 67 at 4 (citing ECF No. 67-1 ¶ 15.d.), its choice to transfer a call from a Virginia phone number to the principal on whose behalf it contracted with Infinix would constitute ratification. *See* Rest. (3d) of Agency § 4.01, cmts. f (failure to object as ratification), g (receipt or retention of benefits as ratification).[3]

---

[3] To be clear, the Court's decision does not rest on the allegation that Fuego received and transferred the call the plaintiff placed from a Virginia number. *See* ECF No. 67 at 6 (arguing that was Fuego's only interaction with the forum state). Indeed, "the plaintiff cannot be the only link between the defendant and the forum. Rather, the "minimum[-]contacts analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there," and "it is the defendant's conduct"—not the plaintiff's—"that must form the necessary connection with the forum [s]tate that is the basis for [specific jurisdiction]." *Walden*, 571 U.S. at 283, 285. Rather, the Court assumes—as the Amended Complaint plausibly alleges—that Fuego directed Infinix to "*dial*" "more than 100 calls" to the plaintiff's Virginia phone number. ECF No. 46 ¶¶ 36, 61 (emphasis added). That amount of

Fuego disagrees with the facts the plaintiff alleges. ECF No. 67 at 6; *see* ECF No. 67-1 ¶ 15.b (asserting that Fuego "did not authorize or engage Infinix to place any calls to [the] [p]laintiff" or to "any consumers in Virginia"); *id.* ¶ 15.h. (stating that "to the extent plaintiff [] received 100 calls from Infinix . . . Fuego had nothing to do with those calls"); ECF No. 67 at 6 (quoting ECF No. 67-1 ¶ 15.h.) (quotation marks omitted). But at this stage, the Court is required to construe all the allegations—including in the affidavit Fuego provided—in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (recognizing that "[the plaintiff's] assertions carry the same quantum of trustworthiness as [the defendant's] sworn affidavit" and holding that the district court erred in granting a motion to dismiss, because it was required to "construe[] both documents in the light most favorable to [the plaintiff]"). In other words, Fuego's mere disagreement with the allegations in the Amended Complaint does not change the Court's view: The plaintiff has made a prima facie showing that Fuego's "suit-related conduct" through its agent, Infinix, "create[d] a substantial connection with [Virginia]." Because the Amended Complaint adequately pleads facts sufficient to sustain personal jurisdiction over Fuego, the Motion to Dismiss will be **DENIED.**

---

deliberate contact with the forum state is not merely "random, fortuitous, or attenuated." *UMG*, 963 F.3d at 352 (citation omitted). It is significant enough that Fuego could "anticipate being sued" in Virginia. *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (other citation omitted). And enough to "amount to a surrogate for presence and thus render the exercise of [jurisdiction] just." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

## IV.   CONCLUSION

Defendant Fuego Leads, LLC's Motion to Dismiss (ECF No. 66) is **DENIED.**

Fuego is **ORDERED** to file an answer to the Amended Complaint within 14 days of the date this Memorandum Opinion and Order is entered.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Newport News, Virginia
May 13, 2024